# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Michael Reglus, : Case No. 1:08CV1568
:
        Plaintiff : Judge Donald C. Nugent
:
    v. : Magistrate Judge David S. Perelman
:
Commissioner of Social Security, : **REPORT AND RECOMMENDED**
: **DECISION**
        Defendant :

      This action seeking judicial review of the defendant's final determination denying the plaintiff's claims for Social Security disability benefits has a rather complicated procedural background and, in this Court's almost thirty years experience, may well present a record number of hearings before an Administrative Law Judge (ALJ) without the claims having been remanded for further proceedings by the Appeals Council or a District Court.

      The applications which directly underlie this proceeding were filed by the plaintiff on May 15, 2002 seeking awards of a surviving child's insurance benefits and of supplemental security income benefits.  He had, however, previously applied for child's insurance benefits in 2001 and for supplemental security income in 1999, and had not pursued an appeal from the denial of those applications at the state agency level.  When the denial of the 2002 applications were before the ALJ in 2005 he granted a request made by plaintiff's counsel for reopening of the two prior denials, holding that the plaintiff was entitled to reopening of the 2001 application as a matter of right pursuant to 20 C.F.R. §404.988(a) and that the 1999 denial should be reopened because the plaintiff's

limited intellect prevented him from timely seeking review of that denial.

Therefore, technically there are four benefits claims incorporated into this action, but the bottom line is that to prevail on any or all the plaintiff must prove that he is disabled within the meaning of the Social Security Act.

Upon denial of his 2002 applications at the state agency level the plaintiff requested de novo review by an ALJ, and a hearing was scheduled for April 13, 2005.  At the outset of that proceeding the ALJ stated "We do not have a Medical Expert present today, and I have in front of me a letter dated April 7th, 2005 addressed to me from [plaintiff's] attorney Marnecheck.  The, the entire letter is one sentence long, and it reads, quote, the Claimant requests that a Medical Expert in psychology testify at the hearing, close quote."  After an extended debate between the ALJ and plaintiff's counsel as to whether the testimony of a medical expert was necessary when a claimant is asserting disability by reason of equaling, rather than meeting, one of the Listings of Impairments the ALJ stated that he was adjourning the hearing in order to procure such testimony.

The second hearing was convened on November 18, 2005.  Testifying at that proceeding were the plaintiff, a cousin of the plaintiff, a clinical psychologist, Dr. Carolee Lesyk, and a vocational expert, Dr. Nancy Borgeson.

The first to testify was Dr. Lesyk.  She first summarized the evidence in the record bearing upon plaintiff's mental capacity.  In the course of that review Dr. Lesyk stated that she considered the IQ findings by a consultative psychologist, Dr. Herschel Pickholtz, to be invalid for the reason that those findings showed a drop in the plaintiff's IQ from earlier testing and "there's no indication of any accident or medical record that would've accounted for such a drop in IQ."  She then opined that the plaintiff did not meet or equal any of the Listings of Impairments.

Immediately before plaintiff's counsel's examination of Dr. Lesyk began the following

appears:

>ATTY: That was a statement.
>
>ALJ: Well, no, it's also sort of a question. I want to invite you to respond.
>
>ATTY: I can't argue with that. I'm just—you want my response, I'm flabbergasted as to what this expert is testifying to. That's why.
>
>ALJ: Well, in about a minute you're going to—or two, you're going to get a chance to cross examine.
>
>ATTY: I don't even know—it's going to be bothering me, for an expert to say people with serious mental disorders get treatment, is ludicrous. I've heard any number of experts testify that when they're that far off, that's why they don't get treatment.
>
>ME: Well, he was going. He just didn't stay going.
>
>ATTY: But doctor, to say people with serious mental disorders seek treatment, is not factually accurate.
>
>ALJ: Well, why don't you go ahead. Now that you've started, counsel, why don't you go ahead and cross.
>
>ATTY: I, don't know where to begin.

To say that the ensuing colloquy between plaintiff's counsel and the witness was acrimonious, with a slightly unpleasant exchange between counsel and the ALJ thrown in, would hardly be an understatement. Reflective of counsel's view of the witness was his statement to the ALJ, when invited to resume his cross-examination:

>ATTY: I don't know if it's going to do me any good. I think that the expert has already made up her mind. There's nothing I could say that's going to change it. She's obviously biased. Her reading of the record has shown that. Where am I going to go? Beat my head up against a brick wall here? She didn't even consider 1205, judge. So now she's going to consider it because we've read it to her? She

3

knows what it is.

At the conclusion of his examination of Dr. Lesyk plaintiff's counsel stated "Again, Your Honor, I renew my request to have this reset with a different medical expert." to which the ALJ responded "At the moment, counsel, I'm not persuaded of the need for that."

However, as the hearing neared its conclusion, both the plaintiff's cousin and the vocational expert having testified, the ALJ asked plaintiff's counsel "Do you think it would be worthwhile to schedule fresh consultative examinations at this point?" Counsel's answer was "I'm going to ask you straight out. If you're going to pay the claim, no. If you're going to deny the claim, that's my only shot, yeah. But I don't think you need it. I think the claim can be paid on what we have here." Following vain efforts on the part of plaintiff's counsel to convince the ALJ to approve the claim on the record as it stood, during the course of which the ALJ said to counsel, "I'm trying to make sure you get every possible advantage," the ALJ confirmed his intention to refer the plaintiff for further consultative evaluations, and to convene another hearing thereafter.

On June 20, 2006 the third hearing was convened. At that proceeding Dr. Hershel Goren appeared as the medical expert and Dr. Ted Macy as the vocational expert. That hearing commenced with:

> ALJ: Before I call Dr. Goren, Counsel, is there anything else that needs to be said or done?
>
> ATTY: Your Honor, my request for a supplemental hearing was not based on the new evidence solely. It was based on my request that you issue a fully favorable decision based on the record, and in the event you are unwilling to do so, then we requested a supplemental hearing. So, again, I renew that. If you are willing to issue a fully favorable, I will waive my request for a supplemental hearing.
>
> ALJ: If I thought I could do that, why we wouldn't be here

                    now, would we?

ATTY:    Okay.  Also, as shown, well, I don't know.  Your hadn't mentioned that in your opening.  You had just said we are here because I requested this.

ALJ:    Well, it is true.  You did request it.

ATTY:    In the alternative.

ALJ:    Yeah,.

       Testimony was then taken from Dr. Goren, who opined that the plaintiff did not meet or equal any Listing, including Listing 12.05.  He opined that the plaintiff would be capable of performing "simple one and two step repetitive tasks.  No high production quotas by which I'm excluding assembly line work, and work in which he gets paid at a piece rate," with only "superficial interpersonal interaction with supervisors, co-workers and the general public."  He also stated that he did not believe that the plaintiff would be absent from work more often than normal.  Upon cross-examination Dr. Goren stated, as had Dr. Lesyk, that he considered the IQ ratings reported by Dr. Pickholtz to be invalid.

       The vocational expert testified that there were jobs which could be performed by an individual such as the plaintiff who had the capabilities/limitations reflected in Dr. Goren's testimony, those being bench assembler, wire worker, electronics worker, and final assembler, none of which required reading above the fourth grade level.  That testimony was not shaken by plaintiff's counsel's examination.

       The fourth, and final, hearing was held on September 5, 2006.  The only witnesses to testify at that proceeding was Dr. Joseph Steiner, a clinical psychologist.  Dr. Steiner stated that based upon the IQ ratings assigned the plaintiff by Dr. Pickholtz the plaintiff would meet Listing 12.05C.

       On December 28, 2006 the ALJ entered his thirty-five page decision denying the plaintiff's

claims, which stands as the defendant's final determination consequent to denial of review by the Appeals Council on May 22, 2008.[1] The headings on the ALJ's "Findings of Fact and Conclusions of Law," with sub-headings where appropriate, were:

1. Mr. Reglus was born on January 2, 1968. Mr. Reglus attained age 22 on January 1, 1990, the day before his 22nd birthday (20 CFR 404.102 and 416.120(c)(4)).

2. As a matter of law, Mr. Reglus cannot receive any Title II benefits for any time prior to January 1, 1986, the day before his 18th birthday, and cannot receive any Title XVI benefits for any month prior to August 1999, when he filed his first (and now reopened) Title XVI application.

3. Mr. Reglus has never engaged in substantial gainful activity (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

4. At all times from January 1, 1986 through the date of this decision, Mr. Reglus had and has the following severe impairments:

    Borderline intellectual functioning
    Learning disorder
    Reading disorder
    Disorder of written expression
    Mathematical disorder
    Dysthmic disorder and/or Dysphoria
    Anxiety
    Mixed personality disorder with some antisocial features and/or Adjustment disorder with depressed mood
    Polysubstance abuse, in apparent remission since no later than 2002, in reported remission since as early as 1992

5. At all times from January 1, 1986 through April 25, 201, Mr. Reglus had no other severe impairment. At all times from April 26, 2001 through the date of this decision, Mr. Reglus had and has the following additional severe impairments:

---

[1]Why it took almost a year and a half from the date of request for review (January 15, 2007) to the date of ruling is unknown, and is distressing.

>   Obesity

6. At all times from April 26, 2001 through June 21, 2002, Mr. Reglus had no other severe impairment. At all times from June 22, 2002 through the date of this decision, Mr. Reglus had and has the following additional severe impairments:

    > Pain in the knees that Mr. Reglus alleged was caused by arthritis
    > Pain in the left shoulder that Mr. Reglus alleged was caused by arthritis
    > Pain and spasm in the lumbar spine and thighs that Mr. Reglus alleged was caused by arthritis
    > Pain in the feet
    > Shortness of breath and dyspnea on exertion

7. At all times from January 1, 1986 through the date of this decision, Mr. Reglus did not have an impairment or combination of impairments that met or meets or medically equaled or equals the criteria for any impairment or combination of impairments listed in the Listing of Impairments, 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

8. After careful consideration of the entire record, I find that at all times from January 1, 1986 through April 25, 2001, Mr. Reglus had the residual functional capacity to perform work activities except for the following limits on Mr. Reglus's [sic] ability to work:

    > Mr. Reglus could not and cannot do work that is not limited to 1 and 2 step repetitive tasks.
    > Mr. Reglus could not and cannot do any assembly line work, any piece rate work, or any other work that involves high production quotas.
    > Mr. Reglus could not and cannot do any work that requires confrontation, arbitration, negotiation, or any other interaction, other than superficial interaction, with the general public, supervisors, or coworkers.
    > Mr. Reglus could not and cannot do any work that requires the ability to read at higher than the 5th grade level.

9. After careful consideration of the entire record, I find that at all times from April 26, 2001 through June 21, 2002, Mr. Reglus had

> the residual functional capacity to perform work activities except for the limits stated in Finding #8 above and the following additional limits on Mr. Reglus's [sic] ability to work:
>
>> Mr. Reglus could not and cannot lift or carry more than 20 pounds occasionally or 10 pounds frequently.
>> Mr. Reglus could not and cannot climb ladders, ropes, or scaffolds.
>> Mr. Reglus could not and cannot climb ramps or stairs more than occasionally.
>> Mr. Reglus could not and cannot bend, stoop, or crouch more than occasionally.
>> Mr. Reglus could not and cannot kneel or crawl.
>> Mr. Reglus could not and cannot work in proximity to unprotected heights.

10. After careful consideration of the entire record, I find that at all times from June 22, 2002 through the date of this decision, Mr. Reglus had the residual functional capacity to perform work activities except for the limits stated in Findings #8 and #9 above and the following limits on Mr. Reglus's [sic] ability to work:

    > Mr. Reglus could not and cannot push or pull with his left upper extremity, or reach overhead with his left upper extremity, more than occasionally. Mr. Reglus is left-handed.

11. Mr. Reglus does not have past relevant work (20 CFR 404.1565 and 416.965).

12. Up to this point, the burden of proof has been on Mr. Reglus. However, the conclusions above now require me to assess Mr. Reglus's [sic] residual functional capacity, age, education, and past work experience to determine if Mr. Reglus can make an adjustment to other work. At this point, the burden shifts to the Commissioner to show that there are other jobs existing in significant numbers in the national economy which Mr. Reglus can perform, consistent with his residual functional capacity, age, education, and work experience. 20 CFR 404.1560(c)92) and 416.960(c)(2).

13. Mr. Reglus was born on January 2, 1968. At all times from January 1, 1986 through the date of this decision, Mr. Reglus was and is a younger individual age 18-44 (20 CFR 404.1563 and 416.963).

8

14. Mr. Reglus has a limited education and is able to communicate in English (20 CFR 416.964).

15. Mr. Reglus does not have transferable job skills because Mr. Reglus does not have past relevant work (20 CFR 404.1568 and 416.968).

16. From January 1, 1986 through the date of this decision, considering Mr. Reglus's [sic] age, education, work experience, and residual functional capacity, Mr. Reglus has been able to perform jobs that exist in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

17. Mr. Reglus has not been under a "disability," as defined in the Social Security Act, at any time from January 1, 1986 through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

Approximately thirteen of the thirty-five pages of the ALJ's decision are devoted to evidence bearing upon the subject of plaintiff's mental status.

The standards which control on a review of this nature were summarized by the Sixth Circuit in Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) as follows:

> Judicial review of the Secretary's decision is limited in scope to determining whether the findings of fact made by the Secretary are supported by substantial evidence and deciding whether the Secretary employed the proper legal criteria in reaching her conclusion, Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967). This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility, Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972). Rather "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. §405(g).
>
> The Supreme Court has stated that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantiality of the evidence must be based upon the record taken as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980), citing Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973). "Substantial evidence is not simply some evidence, or even a great

> deal of evidence. Rather, the `substantiality of evidence must take into account whatever in the record fairly detracts from its weight'." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978), quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951). "We may not focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

In resolving the issue of whether the defendant's final determination is supported by substantial evidence the decision upon judicial review cannot turn upon whether the reviewing court agrees with the Secretary's determination. Indeed, the reviewing court may conclude that substantial evidence would support a final determination contrary to that arrived at by the defendant and yet be obliged to affirm the defendant's final determination. In Mullen v. Bowen, 800 F.2d 535, at 545 (6th Cir. 1986), the court cited with approval the following from Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984):

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposition decision.

On this appeal plaintiff, through new[2] counsel, under the general heading of "The Administrative Law Judge's finding that plaintiff is not disabled is not supported by substantial evidence" advances the claim of error that "The ALJ erred in improperly analyzing Plaintiff's impairments with respect to Listing §12.05C."

This court is quite impressed with counsel's articulate and cogent presentation as to why it could be found that the plaintiff meets or equals Listing 12.05C, and if this was a matter of first impression, rather than a review under the substantial evidence standard, might be persuaded by

---

[2]This court is constrained to add "and more civil than his predecessor" to the reference to new counsel.

10

counsel's argument.

Unfortunately for the plaintiff, this Court is equally impressed with the ALJ's articulate and cogent presentation as to why he found that the plaintiff neither meets nor equals Listing 12.05C. Of particular importance in this regard is the ALJ's acceptance of the medical expert testimony that the IQ ratings assigned by Dr. Pickholtz were unreliable and his acceptance of the opinions of those medical experts that the plaintiff's mental status did not meet or equal Listing 12.05C.

This being so, it clearly places the ALJ's decision within his zone of choice. This Court sees no useful purpose to be served in restating the contents of the ALJ's decision as it pertains to Listing 12.05C, and simply commends to Your Honor a review thereof for the purpose of entering a final judgment in favor of the defendant.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:   June 24, 2009

**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).